UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                    Plaintiff,

                                                    <u>DECISION AND ORDER</u>

                                                    09-CR-6225L

          V.

DANIAL E. WIDNER,

                    Defendant.
_____

        Defendant Danial E. Widner has been charged in a one-count indictment with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). The Court had referred pretrial matters in this case to United States Magistrate Judge Marian W. Payson pursuant to 28 U.S.C. § 636(b).

        Defendant moved to suppress physical evidence seized from his residence, and a post-arrest statement that Widner made to a New York State Police investigator. After an evidentiary hearing, Magistrate Judge Payson issued a Report and Recommendation on August 20, 2010, recommending that Widner's motion to suppress physical evidence be denied, but that his motion to suppress his post-arrest statement be granted. Dkt. #33. Both the Government and Widner have filed objections to that Report and Recommendation. For the reasons that follow, the Report and Recommendation is accepted in part and rejected in part, and defendant's motion to suppress is denied in its entirety.

**I. Standard of Review**

        A district court reviews those portions of a report and recommendation to which a party has timely objected under a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(C). After reviewing the Report and Recommendation and the objections thereto, the district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

If the magistrate judge made credibility findings with respect to witnesses' testimony at a suppression hearing, the district court has discretion to accept those findings based on the written record, but the court may not reject the magistrate judge's credibility findings without conducting an evidentiary hearing at which the district judge has the opportunity to observe the witnesses and evaluate their credibility firsthand. *See In re Karten*, 293 Fed.Appx. 734, 736 (11th Cir. 2008) ("The Supreme Court has held that a district judge has broad discretion to accept a magistrate's credibility findings without hearing witness testimony, in the criminal suppression hearing context, consistent with due process") (citing *United States v. Raddatz*, 447 U.S. 667, 680-81 (1980)); *Cullen v. United States*, 194 F.3d 401 (2d Cir. 1999) ("without an evidentiary hearing, the District Court could not reject the Magistrate Judge's proposed credibility finding"). In this case, the material facts are not disputed and credibility issues do not control.

## II. Physical Evidence

In the case at bar, Magistrate Judge Payson found that, in seizing from the searched premises five computers, over forty compact disks, and other physical evidence, the search team had not complied with the provision in the search warrant that they "take reasonable measures to limit the necessary seizure of computer hardware and/or software from the premises by conducting onsite previews of the computers and digital media located or found therein." The Magistrate Judge set forth the justifiable reasons why some materials were examined off the premises. Nevertheless, Magistrate Judge Payson concluded that suppression of the seized evidence was not warranted, on the ground that, "even if the material previewed could be said to fall outside the scope of the warrant, the search can hardly be construed as an 'indiscriminate rummaging' resembling a general search." Dkt. #33 at 15 (quoting *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000), *cert. denied*, 534 U.S. 816 (2001)). In addition, Magistrate Judge Payson found that "the agents would have

discovered the child pornography whether the forensic preview had been conducted onsite, as directed, or offsite, as in fact occurred," so that "the failure to conduct the forensic preview at the residence cannot be considered the 'but-for cause of obtaining the evidence' ... ." *Id.* at 16 (quoting *Hudson v. Michigan*, 547 U.S. 586, 592 (2006)).

I agree with Magistrate Judge Payson's findings and conclusions in this regard, and accordingly I accept her recommendation that defendant's motion to suppress physical evidence be denied. To justify suppression, the search "must *actually resemble* a general search." *United States v. Liu*, 239 F.3d 138, 141 (2d Cir. 2000). This search clearly did not resemble anything like a general search of the premises, and as the magistrate judge explained, the search teams' failure to conduct an on-site forensic preview was not a "but-for cause of obtaining the evidence." *Hudson v. Michigan*, 547 U.S. at 592.

## III. Defendant's Statements

At the time of his arrest, Widner told the arresting officers that he "wanted a lawyer," but that he could not afford one. Dkt. #24 at 13. After he made that statement, Widner was transported to the state police barracks for processing and was not interrogated by the officers.

At the police barracks, Investigator Tracy Cass, after filling out some paperwork, prepared to take Widner to the Rochester City Jail, for an overnight stay pending his arraignment the next day. As they were getting ready to leave the barracks, Cass informed Widner of the charges against him, and asked Widner if he had any questions. Widner replied, "Where did they find it?" It is this comment that the defendant seeks to suppress. Cass responded, "I didn't find it, the computer analyst found it." Cass asked no follow up questions. Widner said nothing further, and he was then taken to the jail.

In her Report and Recommendation, Magistrate Judge Payson, while acknowledging that the facts here presented a "difficult issue," concluded that by "follow[ing] up" her recitation of the charges with the question, "Do you have any questions?," "Cass should have known that her follow-

up inquiry to Widner would likely be perceived by him as directed to the charges, rather than the post-arrest procedure, and would likely elicit an incriminating response." Dkt. #33 at 19.

After conducting a *de novo* review of the record, I disagree with that conclusion, and I find that Widner's statement, "Where did they find it?" is not subject to suppression. In my view, the evidence here does not support a finding that Cass either knew or should have known that her question, "Do you have any questions?" was reasonably likely to elicit an incriminating response from defendant. *See United States v. Robinson*, 586 F.3d 540, 546 (7th Cir. 2009) ("there is no violation unless a reasonable objective observer would have believed that the law enforcement officer's statements to the defendant were reasonably likely to elicit an incriminating response") (internal quotation marks omitted); *Acosta v. Artuz*, 575 F.3d 177, 191 (2d Cir. 2009) ("courts have not endorsed the proposition that 'statements by law enforcement officials to a suspect regarding the nature of the evidence against the suspect constitute interrogation as a matter of law,' recognizing that '[i]t simply cannot be said that *all* such statements are objectively likely to result in incriminating responses by those in custody'") (quoting *United States v. Payne*, 954 F.2d 199, 203 (4th Cir. 1992)).

Although Cass had just informed Widner of the charges against him, her statement, "Do you have any questions?" was not obviously directed to those charges. The record also shows that Cass and Widner were preparing to leave the state police barracks to go to the jail, where Widner was to stay overnight until his arraignment the following morning. Under those circumstances, Cass's open-ended, nonspecific question, "Do you have any questions?" could reasonably have been interpreted as wanting to know if Widner had any questions about where they were going, what would happen when they got to the jail or in court the next day, or anything else that he wanted to clarify, or concerns that he wanted to raise before they left.[1]

---

[1]Cass herself testified that in her experience, arrestees "[g]enerally . . . have questions about when they're going to see a judge, . . . how much the bail is going to be, if they can have a phone call, things of that nature if they're unfamiliar with the arrest process." Dkt. #24 at 15.

Furthermore, Widner's response–"Where did they find it?"–only indirectly related to Cass's recitation of the charges against him. Presumably, by "it," Widner was referring to the pornographic images found on one of the items seized from his residence. Cass had not said anything to Widner about those images, and although Widner may have inferred, based on the charges against him, that the police had found child pornography at his residence, his question to Cass was not one that she should reasonably have foreseen as a response to her nonspecific, general question about whether Widner had any questions of her.

In making this determination, I remain mindful that to warrant suppression, defendant's statement must have been made in response to custodial *interrogation*, the definition of which "can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 302. *See also Wallace v. Branker*, 354 Fed.Appx. 807, 824 (4th Cir. 2009) (interrogation "is defined by police questioning and conduct designed to elicit an incriminating response"), *cert. denied*, 130 S.Ct. 3543 (2010); *accord Van Hook v. Anderson*, 488 F.3d 411, 416 n.2 (6th Cir.), *cert. denied*, 552 U.S. 1023 (2007); *Easley v. Frey*, 433 F.3d 969, 973 (7th Cir. 2006).

Here, Cass may have just finished informing Widner of the charges against him, but she did not ask him if he had any questions about those charges, or about the basis for the charges. Considering her question against the backdrop of the circumstances that then existed, including the fact that Widner was about to be transported to the jail and that he was to be arraigned the next day, I conclude that Cass's facially innocuous statement, "Do you have any questions?" was not "designed to elicit an incriminating response," was not tantamount to interrogation and that Widner's statement, "Where did they find it?," is therefore not subject to suppression. *See Acosta*, 575 F.3d at 191 ("*Innis* calls upon courts to consider police conduct in light of the totality of the circumstances in assessing whether the police 'should have known' that their actions 'were reasonably likely to elicit an incriminating response'") (quoting *Innis*, 446 U.S. at 303).

## CONCLUSION

I accept and adopt the Report and Recommendation (Dkt. #33) of Magistrate Judge Marian W. Payson in part, and reject it in part. Defendant's motion to suppress tangible evidence and statements (Dkt. #16) is denied in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
November 30, 2010.